UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

C.D., by and through his Parent, )
VALERIE SCHALK-DAY, )
       )
       Plaintiffs, )
       )
       ) Civil Action No. 1:21-cv-00009 (AJT/IDD)
v. )
       )
THE SCHOOL BOARD OF FAIRFAX )
COUNTY, )
       )
       Defendant. )

**REPORT AND RECOMMENDATION**

This matter is before the Court on the parties' cross-motions for summary judgment [Dkt. Nos. 35, 41] in an action brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiff Valerie Schalk-Day ("Plaintiff" or "Parent"), the mother of C.D., (collectively "Plaintiffs"), alleges that the Defendant[1], School Board of Fairfax County ("School Board"), failed to provide C.D. with the Free Appropriate and Public Education ("FAPE") required by the IDEA, and as a result, she should be reimbursed for costs incurred to place C.D. in two residential private special education schools, Little Keswick School ("LKS") and Glenholme School. Defendant responds that the School Board fully complied with the IDEA by providing appropriate individualized education programs ("IEPs") for C.D. in the least restrictive environment.

For the reasons stated below, the Court concludes that the Hearing Officer's ("HO") findings were regularly made, and that there is no evidence warranting remand or reversal of the Hearing Officer's decision. Accordingly, the undersigned recommends that Defendant's Motion

---

[1] The defendant in this action is the School Board of Fairfax County; however, the references throughout the pleadings and the administrative records are to the Fairfax County Public Schools ("FCPS").

for Summary Judgment be **GRANTED** [Dkt. No. 35] and that Plaintiffs' Motion for Summary Judgment [Dkt. No. 41] be **DENIED**.

## I. BACKGROUND

### A.      Factual Background

At the time the Due Process Complaint was filed, C.D. was a 19-year-old Fairfax County Public School student. AR 298-004.[2] C.D. was diagnosed with Autism Spectrum Disorder at the age of three. Since then, his diagnoses include, but are not limited to, Attention Deficit Hyperactivity Disorder ("ADHD"), Language Disorder, Depression, General Anxiety Disorder, and Auditory Processing Disorder. Dkt. No. 1 at 3. Throughout his schooling, C.D. received special education services through FCPS and private special education day schools. AR 298-005. On June 30, 2016, after numerous IEP meetings, FCPS proposed an IEP placing C.D. at the Quander Road School ("Quander Road"). *Id.*

In August of 2016, the Parent submitted a letter to FCPS indicating her disagreement with the Quander Road placement and noting her intention to seek tuition reimbursement for C.D.'s enrollment at Little Keswick School, a residential private special education school in Keswick, Virginia. AR 298-006. However, there continued to be communication and collaboration between the Parent, FCPS, and the IEP team while C.D. attended LKS from 2016 through 2018-2019. AR 298-007. This collaboration is evidenced by a letter dated February 16, 2018, where FCPS agreed to pay C.D.'s educational costs based on the premise that C.D. was attending LKS for both educational and medical purposes. AR 330-003.

The IEP team convened in February of 2019 to develop C.D.'s 2018-19 IEP. AR 62. Following the Parent's partial consent to this IEP, C.D. began attending Quander Road in the summer of 2019. AR 54. Throughout the 2019-2020 school year, the FCPS IEP team and the Parent continued to meet to

---

[2] References to the administrative record will be referred to as "AR."

reevaluate C.D.'s needs and revise C.D.'s IEP to include new goals and discuss psychoeducational evaluations. AR 79, 110. The Parent expressed concern that Quander Road was not the proper placement for C.D. based on his academic and behavioral needs. Dkt. No. 41-1 at 8. Notwithstanding the Parent's concerns, FCPS maintained that C.D. performed well in all his academic classes at Quander Road, mastered his IEP goals in a variety of areas including social skills and self-regulation, and was never physically aggressive toward his classmates or school staff. Dkt. No. 36 at 12.

On May 1, 2020, FCPS contacted the Parent to discuss the development of a temporary learning plan in light of the public schools' closure due to the COVID-19 pandemic. Dkt. No. 36 at 13. Soon thereafter, the Parent raised concerns regarding the academic rigor and pacing of instruction at Quander Road, and recommended a private placement for C.D. Dkt. No. 41-1 at 12. FCPS asserted that despite pandemic-related restrictions, FCPS provided C.D. proper instruction, goals, services, and accommodations to the extent possible. Dkt. No. 36 at 14.

Regarding the 2020-21 school year, the IEP team proposed 99.5 hours a month of special education career services through the Secondary Transition to Employment Program ("STEP") at Mt. Vernon High School. Dkt. No. 36 at 14. However, Parent declined this placement and notified FCPS that she intended to enroll C.D. at the Devereux Glenholme School in Washington, Connecticut despite FCPS' position that Glenholme was not an appropriate placement or the least restrictive environment for C.D. Dkt. No. 41-1 at 12; Dkt. No. 36 at 16.

B.   **Procedural Background**

On October 7, 2020, following a five-day due process hearing, the Hearing Officer issued a decision, finding that: (1) Parent was estopped from claiming that FCPS did not offer a free and appropriate public education ("FAPE") for the 2018-19 school year; (2) FCPS offered a FAPE for the 2019-20 school year through the IEP and recommended placement at Quander Road School; and (3) FCPS offered a FAPE during the 2020-21 school year through the IEP dated May 26, 2020, and proposed

3

placement at Mount Vernon Secondary Transition to Employment Program ("STEP"). Dkt. No. 5 at 1-2.

On January 4, 2021, having exhausted their administrative remedies, Plaintiffs filed the instant suit challenging the Hearing Officer's decision. Dkt. No. 1. By this lawsuit, Plaintiffs seek reversal of the Hearing Officer's Final Decision and Order, reimbursement for tuition, fees, and expenses incurred by the parents to effectuate C.D.'s enrollment and special education services during the 2018-2019 school year at Little Keswick School and during the 2020-2021 school year at the Glenholm School, as well as reasonable attorneys' fees under the IDEA. Dkt. No. 1 at 44. On June 21, 2021 and June 23, 2021, Plaintiffs and Defendant respectively filed cross-motions for summary judgment. Dkt. Nos. 35, 41. On September 24, 2021, the Honorable United States District Judge Anthony J. Trenga referred this matter to the undersigned, who took the matter under advisement to issue this Report and Recommendation.

## II.  **STANDARD OF REVIEW**

IDEA cases are adjudicated based upon the record of the administrative proceedings. *Cty. Sch. Bd. of Henrico Cty.  v.  Z.P.*, 399 F.3d 298, 309 n.7 (4th Cir. 2005). Accordingly, judicial review "may be conducted on the administrative record even if there are disputed issues of material fact." *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996). The parties have agreed that this civil action should be decided based on the administrative record, as supplemented, and without the need for trial. *See* Rule 16(B) Scheduling Order [Dkt. No. 10] (approving Joint Discovery Plan [Dkt. No. 9]). Plaintiffs, as the party challenging the administrative decision, bear the burden of establishing that the Hearing Officer's Final Decision and Order were erroneous. *Barnett v. Fairfax Cty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.) cert. denied, 502 U.S. 859 (1991). To prevail, the Plaintiffs must show that the special education offered by FCPS was not appropriate for C.D., and that the Little Keswick School and Glenholme School, the private schools that Plaintiffs unilaterally selected, were

appropriate. *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 998 (2017). In that regard, the IEP typically should be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* Moreover, the standard is a reasonable one, and the IDEA requires "great deference to the views of the school system rather than those of even the most well-meaning parents." *Id.* at 1001.

A district court reviewing a Hearing Officer's decision under the IDEA "conducts modified *de novo* review, giving due weight to the underlying administrative proceedings." *O.S. v. Fairfax Cty. Sch. Bd.*, 804 F.3d 354, 360 (4th Cir. 2015) (internal quotations omitted). "Factual findings made during the state administrative proceeding are entitled to a presumption of correctness, so long as the findings were 'regularly made.'" *Cty. Sch. Bd. of Henrico Cty., Virginia v. Z.P. ex rel. R.P.*, 399 F.3d 298, 305 (4th Cir. 2005) (quoting *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). "Factual findings are not 'regularly made' if they are reached through a process that is 'far from the accepted norm of a fact-finding process.'" *Id.*

### III.  ANALYSIS

Plaintiffs raise two primary issues in their motion for summary judgment: (1) that FCPS failed to offer an IEP reasonably calculated to provide a FAPE to C.D. during the 2017-2018, 2018-2019, 2019-2020, and 2020-2021 school years, and (2) that this Court should only consider evidence and testimony as it relates to the claims brought during the initial due process hearing. In that regard, Plaintiffs argue that the Hearing Officer's decision was not regularly made because the findings did not accurately represent the arguments and testimony shared during that initial hearing. Dkt. No. 45. In contrast, Defendant seeks summary judgment on the grounds that the substance of the Hearing Officer's findings is well-supported by evidence and correctly applies the applicable legal principles.

Dkt. No. 36 at 2. Since Defendant's brief in support of summary judgment focuses on disputing the arguments propounded by Plaintiffs, the undersigned will address each of Plaintiffs' objections to the Hearing Officer's decision in turn.

## 1.  Deference

Plaintiffs argue that the Hearing Officer's decision is not entitled to any deference because the findings were not "regularly made." In the Fourth Circuit, administrative findings are regularly made if:

> The hearing officer conducted a proper hearing, allowing the parents and the School Board to Present evidence and make arguments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case.

*J.P. ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty.*, 516 F.3d 254, 259 (4th Cir. 2008). Contrary to Plaintiffs' argument, the record clearly shows that the Hearing Officer allowed both parties to make opening statements, introduce evidence, and present and cross-examine witnesses. *See* AR 330-001 – 330-002. The Hearing Officer frequently asked his own questions of witnesses to clarify issues and, following the hearing, allowed the parties to submit post-hearing briefs. *See* AR 330-001. The resulting decision is sufficiently detailed and makes findings that are dispositive of the issues in the case. In his decision, the Hearing Officer identified the correct central issues presented, summarized witness testimony, outlined the relevant legal standards, and included findings of fact and legal conclusions. AR 330-001 – 330-007.

Plaintiffs complain that the Hearing Officer completely ignored a number of issues presented at the hearing. In that regard, the Plaintiffs appear to argue that the Hearing Officer did not set forth the facts upon which he based his decision with as sufficient detail as Plaintiffs may have preferred. Such detail is not the standard required by the Fourth Circuit. In that regard, the Fourth Circuit has recognized that:

> It must be remembered that in Virginia, the IDEA hearing officers are lawyers appointed through

the Supreme Court of Virginia to serve as judges in IDEA due process hearings. [citation omitted]. The hearing officers operate under tight time constraint – in non-expedited cases, a written opinion must be issued within 45 days after a request for a due process hearing is received. [citation omitted]… This short time-frame means that the written opinions may be issued before a transcript has been prepared. Under these circumstances, hearing officers (who have no state-provided law clerks or clerical support) cannot be expected to craft opinions with the level of detail and analysis we expect from a district judge. By rejecting the hearing officer's opinion in this case for lack of detail, the district court improperly held the hearing officer to a standard not dictated by statute or case law and one which ignored the constraints under which an IDEA hearing officer operates.

*J.P.*, 516 F.3d at 263. Although the Hearing Officer's decision did not recite Plaintiffs' issues verbatim, he properly identified and reviewed the core issues in this matter. And, according to the Fourth Circuit, which has held that the level of detail required of a hearing officer is relatively low (*see Id.* at 262), the undersigned finds that the Hearing Officer's decision is entitled to a presumption of correctness.

### 2. 2017-2019 School Years

#### a. Estoppel

The Hearing Officer correctly applied the IDEA's two-year statute of limitations in concluding that Plaintiffs' claims based on events before the Parent filed her administrative hearing request, were time barred, specifically, the claims based upon the alleged denial of FAPE during the remainder of the 2017-2018 and 2018-2019 school years. This finding was based on the premise that the Parent accepted over $200,000.00 from FCPS in educational payments, while at the same time failing to file a Due Process hearing Request alleging conduct by the FCPS in violation of the IDEA, despite having multiple opportunities to do so.

Courts in the Fourth Circuit have held that where parents received notice of their right to pursue administrative remedies and did not do so, they could not raise procedural challenges to the prior IDEA procedures. *Vipperman v. Hanover Cnty. Sch. Bd.*, 22 IDELR 796, 799-801 (E.D. Va. 1995); *Ian H. v. Fairfax Cnty. Sch. Bd.*, No. 97-168-A, Slip. Op. at *2 (E.D. Va. 1997) (holding that Plaintiff was estopped from challenging eligibility decision and seeking reimbursement of tuition costs when Plaintiff failed to pursue her administrative remedies promptly).

In the instant case, Plaintiffs assert that the Hearing Officer "erroneously stated that the Parent acknowledged that C.D.'s initial placement at Little Kenswick School was for medical/non-educational purposes" and further claim that there was no evidence to support this conclusion. Dkt. No. 45 at 5. However, this assertion is contrary to the evidence contained within the administrative record. In that regard, the Parent and FCPS initially stipulated that C.D.'s placement at LKS was for both medical and educational purposes. This agreement is evidenced by Parent's Exhibit 8, wherein the mother wrote: "We continue to believe that [C.D.] requires placement in a therapeutic, residential program for both medical and educational purposes and appreciate your continued support." AR 330-004.

Based on this premise, FCPS agreed to pay the educational portion of the Little Keswick program. AR 26, 45. Indeed, FCPS paid a total of $210,647.28 toward the cost of C.D.'s attendance at Little Keswick for approximately three years. AR 265, p. 40; AR 26, 144. Parent acknowledged that she knew she had the right to appeal the Local Education Agency's ("LEA") proposal, received Prior Written Notice as to the Procedural Safeguards, and was represented by counsel or an advocate at many of the IEP meetings. Therefore, the Hearing Officer found that the Parent should not be permitted to challenge FCPS's proposal after receiving over $200,000 and after failing to appeal the proposal despite having numerous opportunities to do so. Accordingly, the undersigned supports this finding that the Parent is estopped for failing to promptly utilize administrative remedies to argue the incorrectness of decisions which she could have prevented by asserting them earlier.

### b. FAPE during the 2017-18 and 2018-19 school years

Even if Plaintiffs were not estopped from challenging the 2017-18 and 2018-19 IEPs, the record supports that FCPS provided a FAPE to C.D. during that time period. As explained above, in order for a school to satisfy its obligation under the IDEA, it must "offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's

circumstances." *Endrew*, 137 S. Ct. at 999. Furthermore, an IEP is reasonably calculated when it enables the child to achieve passing marks and advance from grade to grade. *Id.*

The record clearly indicates that FCPS' proposed IEPs were reasonably calculated to enable C.D. to make progress appropriate in light of his circumstances. In that regard, in October 2018 and February 2019, the IEP team convened to develop C.D.'s 2018-19 IEP. AR 62. Based upon standardized testing from Little Keswick, current grades, progress reports, and parent/teacher input, FCPS proposed goals in Reading Comprehension, Writing Composition, Social Skills, Communication, Executive Functioning, and Self-Regulation. AR 62, 64. Subsequently, the IEP team proposed 109 hours of special education services per month and 1 hour per month of employment and transition representative services. The team also concluded that: (1) 1:1 support was overly restrictive, (2) C.D.'s needs could be met in less restrictive ways, and (3) special education services could be provided through placement at Quander Road School. AR 64. The IEP team reconvened on February 26, 2019 and March 19, 2019 to discuss a transition support plan to Quander Road. The Parent partially consented to this IEP, but objected to the level of support services and Quander Road placement, which offered a small school learning environment for special education students through small classes, psychologists, social workers, and counselors. AR 265, p. 18; AR 266, p. 183.

Here, Plaintiffs argue that the IEPs did not properly address C.D.'s needs and failed to include appropriate goals. Yet, during the summer of 2019, while C.D. was at Quander Road, he met all but one of his goals in executive functioning, social skills, and self-regulation. AR 66; 76; AR 266, p. 324; AR 54, pp. 17-19. Accordingly, the Hearing Officer properly found that FCPS provided a FAPE during the 2017-19 school years.

### 3. 2019-2020 School Year and Quander Road Placement

The Hearing Officer also correctly concluded that FCPS offered a FAPE to C.D. for the 2019-2020 school year. Plaintiffs argue that C.D.'s needs were not adequately addressed in the IEP and that a

residential, one-to-one education was the key to C.D.'s appropriate education. Dkt. No. 41-1 at 24. In addition to requiring that disabled students receive a FAPE, the IDEA also requires that any FAPE be in the "least restrictive environment." *Rowley*, 458 U.S. at 202. Applicable regulations provide that local placements are highly preferred, and school systems should turn to private placements only when the student's disability is such that he or she cannot be educated in a public-school setting. 34 C.F.R. § 300.550(2).

Here, the work samples, graded assignments, progress reports, and report cards submitted by FCPS reflect that C.D. was making appropriate progress at Quander Road. AR 123, 148-003, 148-033, 88 – 90, 153. In that regard, C.D.'s English teacher testified that C.D. scored higher than many of the other students in her English 12 class. AR 267-114. Testimony from C.D.'s school psychologist, Quander Road's principal, and speech language pathologist all corroborated the fact that C.D.'s behavior significantly improved during the school year. AR 267, pp. 11-12, 16; AR 266, pp. 175 – 179, 367.

Based upon five days of testimony, the Hearing Officer concluded that the services C.D. received at Little Keswick School were fundamentally similar to those he received at Quander Road School. AR 330-004. At Quander Road, C.D. had the equivalent of one-to-one attention when needed, and at both schools, he enjoyed accommodations such as relaxation of work requirements and toleration of mild disorderly conduct. AR 330-005. Again, the IDEA requires neither a perfect education, nor an education that meets parental desires and requirements. The IDEA only requires that the proposed IEP be "reasonably calculated to confer some education benefit on a disabled child." *See* 20 U.S.C. §1412(a)(1)(A); *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 328 (4th Cir. 2009); *MM ex rel. DM v. Sch. Dist. Of Greenville, Cnty.*, 303 F.3d 523, 526 (4th Cir. 2002). Not only did C.D. progress academically and behaviorally at Quander Road, but Plaintiffs failed to demonstrate that C.D. could not have been educated in Quander Road, a public school setting. Accordingly, the Hearing Officer correctly found that the FCPS' IEP and Quander Road placement for the 2019-2020 school year

were appropriate.

### 4. 2020-21 School Year and STEP Placement

Finally, Plaintiffs challenge the Hearing Officer's finding that the May 26, 2020 IEP and C.D.'s proposed placement at Mount Vernon Secondary Transition to Employment Program ("STEP") were appropriate. In concluding that placement in the Mount Vernon STEP was appropriate, the IEP team reviewed formal and informal assessments, private evaluations, progress reports, and recommendations from Dr. Jay R. Lucker's auditory and oral motor assessment. AR 142. The IEP FCPS proposed, subsequent to the team's review, was designed to prepare C.D. for gainful employment, train him how to maintain checking accounts, instruct him how to pay bills, and enroll him in a personal finance class. Dkt. No. 46 at 21. In response, the Parents proposed enrolling C.D. in the Glenholme School in Connecticut to complete his academic studies and improve his functioning, life, and social communication skills. AR 250. The environment sought by the Parent at Glenholme School might have been ideal for C.D., but an ideal educational environment is not what the IDEA requires. An IEP must be "reasonable," but it does not have to be "ideal." *Endrew*, 137 S. Ct. at 999. The placement should also be "as close as possible to the child's home." 34 C.F.R. § 300.552(b)(3).

During the hearing, the Parents presented the testimony of Dr. William Ling, an expert in clinical psychology, who offered his opinion of both the STEP program and Glenholme School. The Hearing Officer found that Ling's testimony recommended a setting similar to the LKS but did not expressly state that C.D. should attend the Glenholme School. AR 330-006. Instead, Dr. Ling proposed an individualized program and even suggested a structured program which would have given C.D. access to training and skills in a job. *Id.* FCPS provided a plan tailored to fit C.D.'s needs as corroborated by Dr. Ling's testimony and offered STEP as a placement, which was also a less restrictive environment than the Glenholme School, located in Connecticut. The Hearing Officer concluded that the proposed 2020-21 IEP and placement matched Dr. Ling's recommendations, and therefore, that FCPS offered a

FAPE for the 2020-21 school year. The undersigned therefore finds that the Hearing Officer's findings were regularly made in that regard.

### 5. Additional Evidence

Plaintiffs argue that this Court should not consider the evidence FCPS submitted regarding FCPS' proposed IEPs and placements for the 2020-21 and 2021-22 school years. [Dkt. No. 48 at 17]. Pursuant to the relevant statute, courts are required to hear additional evidence at the request of a party. 20 U.S.C. § 1415(i)(2)(C)(ii).    In that regard, the Fourth Circuit has authorized the admission of additional evidence when such evidence includes events that have taken place since the time of the administrative hearing. *Springer v. Fairfax County School Board*, 134 F.3d 659 (4th Cir. 1998).   In the instant case, FCPS seeks to provide for consideration, a new proposed IEP and related documents for the remainder of the 2020-21 and 2021-22 school year. Dkt. No. 49 at 19. Plaintiffs oppose Defendant's request for relief while at the same time alleging that FCPS continues to deny C.D. a Free and Appropriate Public Education through the present and having previously requested leave to file supplements of its own to the administrative record. Dkt. No. 1 at 44; Dkt. No. 26.  In light of the above, this Court finds it appropriate to admit for consideration, FCPS' proposed exhibits as supplements to the administrative record.

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiffs' Motion for Summary Judgment [Dkt. No. 41] be **DENIED** and Defendant's Motion for Summary Judgment [Dkt. No. 35] be **GRANTED**.

## IV. <u>NOTICE</u>

**By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/ Ivan D. Davis

March 4, 2022
Alexandria, Virginia

Ivan D. Davis
United States Magistrate Judge